IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANDRE J. MAHONE,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        CASE NO.: 1:16cv00655-SRW
                                    )
BBG SPECIALTY FOODS, INC.,          )
d/b/a TACO BELL,                    )
                                    )
        Defendant.                  )

**MEMORANDUM OPINION AND ORDER**[1]

Plaintiff Andre J. Mahone brings this action against defendant BBG Specialty

Foods, Inc., d/b/a Taco Bell ("BBG"), alleging employment discrimination and retaliation

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title

VII"), and the Equal Pay Act, 29 U.S.C. § 206(d)(1) ("EPA"). *See* Doc. 9 (Amended

Complaint). BBG is a Taco Bell restaurant franchisee. The plaintiff was employed by the

defendant at a Taco Bell in Dothan, Alabama, from November 29, 2013 until he was fired

on October 9, 2015. He was hired to the position of "team member," and defendant

promoted him to "shift leader" on February 4, 2014. Plaintiff held the shift leader job title

until his termination from employment. This lawsuit concerns allegations of disparity in

plaintiff's pay relative to female shift leaders, as well as allegations that the defendant

failed to promote the plaintiff to Assistant Manager because of gender discrimination.

---

[1] On October 7, 2016, the parties consented to final dispositive jurisdiction by a Magistrate Judge pursuant
to 28 U.S.C. § 636(c). *See* Doc. 13; Doc. 14.

Plaintiff maintains that defendant terminated his employment on October 9, 2015 in retaliation for the plaintiff's complaints of gender discrimination.

This cause is presently before the court on defendant's motion for summary judgment. *See* Doc. 22. Plaintiff filed an opposition to the motion, *see* Doc. 29, and BBG replied, *see* Doc. 30. Upon review of the motion and the record, the court concludes that defendant's motion for summary judgment is due to be granted.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A). "All affidavits [and declarations] must be based on personal knowledge and must sets forth facts that would be admissible under the Federal Rules of Evidence[.]" *Josendis*, F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual

inferences in the light most favorable to the nonmovant. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). However, "[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (citation omitted) (internal quotation marks omitted).

## BACKGROUND AND UNDISPUTED FACTS[2]

### I.     Material Facts Regarding Pay

In the nearly two years that the plaintiff was employed by defendant, he received three pay raises. When defendant promoted plaintiff from team member to shift leader on February 4, 2014, plaintiff received a raise from $7.50 per hour to $8.25 per hour. He also received raises on May 28, 2014 and August 19, 2015 to $8.75 per hour and $9.00 per hour, respectively. The latter two raises came after the plaintiff complained in July 2015 to the Restaurant General Manager that female shift leaders were paid more per hour. Plaintiff complained about discrimination generally, but he did not specify that he was complaining about gender discrimination. The plaintiff testified that he was satisfied with the raise, and he did not have any conversation with a member of management about pay discrimination

---

[2] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). These are the facts for summary judgment purposes only. They may or may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.") (citation and marks omitted). Also, the "facts" set out herein are gleaned from the parties' evidentiary submissions but not from counsels' unsubstantiated statements in the parties' briefs. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). *See also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

after July 2015. (Doc. 23-4; Pl. Dep. 155, 190-91). Further, in his brief in response to the instant motion, the plaintiff concedes that he did not make complaints about gender discrimination after July 2015. *See* Doc. 29 at 4 ("Plaintiff agrees that he never explicitly complained about being discriminated against after July 2015."). There is no evidence of record that the plaintiff complained at any other time about discrimination during his period of employment with the defendant.

Throughout the entirety of plaintiff's employment by defendant, the highest pay differential between the plaintiff and that of the highest paid shift leader was $0.75 per hour.

## II.  Material Facts Regarding Promotion to Assistant Manager

Defendant hired Bonnie Emerson as the Assistant Manager effective May 13, 2015. Defendant created the position because, in March 2015, the store began selling breakfast, there were employees on-site from 6:00 a.m. until 1:00 a.m., and the Restaurant General Manager could not be on-site for that amount of time. Emerson had twenty years of restaurant management experience at or above the assistant manager level, and she had been an Assistant Manager at another Taco Bell location in Tennessee. None of the shift leaders at the restaurant at the time Emerson was hired as the Assistant Manager had that amount of relevant experience, including the plaintiff. He had no management experience at a level higher than the shift leader position. He admits that Emerson was more qualified than he for the Assistant Manager position. *See* Doc. 29 at 6.

There is no evidence before the court that the plaintiff applied to be the Assistant Manager. The plaintiff testifies that, "[s]ometime in February or March 2015, [he] had

conversations with [Restaurant General Manager] Charity Carnley about being promoted to the Assistant Manager position. … She said that [he] might get the position or that [he] would get the position." Doc. 29-2 at 2. One of defendants' former employees, Christopher Trawick, submitted sworn testimony that, "As early as December 2014, Charity Carnley … told [him] that [the plaintiff] would get the Assistant Manager position." Doc. 29-3. Plaintiff "believed" that Carnley "was the ultimate decision maker" with respect to promotions. Doc. 29-2 at 2. However, the defendant presents uncontroverted evidence that Carnley, as a Restaurant General Manager, lacked the authority to promote an employee.

Plaintiff was not a part of the decision-making team as to the hiring of an Assistant Manager. He did not know who had final hiring authority, but he testified at his deposition that he thought the decision would be made by the Restaurant General Manager and the Market Coach, Sandy Howell. However, those individuals did not have hiring authority. The Restaurant General Manager could make hiring recommendations to the Market Coach and to Kay Nailen, one of BBG's owners. The decision to hire Emerson was made by the Market Coach with final approval from Nailen.

### III.   BBG's Termination of Plaintiff's Employment

Plaintiff was responsible for making bank deposits, and there was a question about a short deposit – a deposit that was less than defendant's records indicated that it should be – made by the plaintiff around October 2, 2015. Plaintiff testified that he was "very upset" about being accused of making a short deposit. Doc. 23-4; *see also* Doc. 23-13 at 15-23 (text messages). Beginning on October 3, 2015, plaintiff sent late-night, profanity laden texts to the Restaurant General Manager and the Market Coach about the deposit issue.

Also on October 3, 2015, he argued with Assistant Manager Emerson about the deposit, and he raised his voice during the altercation. Emerson called the Restaurant General Manager to inform her about the argument. Thereafter, the Restaurant General Manager called the store and sent the plaintiff home. On October 5, 2015, management discovered that the deposit shortage was an error outside of the plaintiff's control, and that the money was in the defendant's bank account. The plaintiff was not disciplined for making a short deposit. However, he remained upset about the allegation of wrongdoing.

On the evening of October 8, 2015, plaintiff attended a meeting with his managers in the lobby of the restaurant. According to the plaintiff, there were one or two customers in the lobby or the nearby dining area. Near the end of the manager's meeting, plaintiff and a co-worker, Tawanna Stovall, argued. According to the plaintiff's deposition, he did not yell or curse at Stovall, but he raised his voice and he lost his temper. He asked the Restaurant General Manager if he could leave, she responded that he could, and he clocked out.

As plaintiff left the restaurant, another employee told plaintiff that the Restaurant General Manager caused the altercation between the plaintiff and Stovall. He reentered the restaurant, and confronted the Restaurant General Manager with a raised voice. He was yelling "a little bit" and he was upset, but he did not use profanity during his altercation with the Restaurant General Manager. Doc. 23-4 at 29. He also did not threaten her. *See id.*

The following day, the plaintiff was scheduled to work, and he texted the Restaurant General Manager to ask if he could miss his shift because he felt uncomfortable returning

to the restaurant. According to the plaintiff, she responded that he could miss work if he found someone to cover the shift. For reasons that are not clear from the briefs or the evidence of record, the plaintiff reported to the restaurant on October 9. The Restaurant General Manager told him then that he was fired because he was "cussing" at her the night before. Doc. 23-4 at 29.

Plaintiff testified that he was terminated for a number of reasons, including his altercation with the Restaurant General Manager on October 8, his argument with Stovall on October 8, the issue with the deposit on October 2, his argument with Emerson about the deposit issue, his reaction to the accusation of wrongdoing about the short deposit, and the text messages that he sent to the Restaurant General Manager to ask that she prepare paperwork properly. *See* Doc. 23-4. The plaintiff testified that his termination came after he complained on July 5, 2015, about discrimination with respect to pay and promotion, but he did not testify that he was fired *because* of those complaints.[3]

## DISCUSSION

### I.     Mahone's Claims

---

[3] In the plaintiff's brief in opposition to the motion for summary judgment, plaintiff's counsel asserts that, as a matter of fact, "Plaintiff believes he was terminated because he complained about being discriminated against and because he complained about being paid less than other females holding the shift leader position." Doc. 29 at 2. In support of this assertion, plaintiff's counsel cites plaintiff's EEOC Intake Questionnaire, which is not sworn testimony made under penalty of perjury, and the plaintiff's declaration filed with the response in opposition to the defendant's motion for summary judgment. *See* Doc. 29-1; Doc. 29-2. This assertion of fact is not supported by any evidence of record, including the EEOC Intake Questionnaire (plaintiff was "fired over nonsense"), and the plaintiff's declaration (no mention of a reason for termination). Doc. 29-1 at 6; Doc. 29-2. Also, the assertion by plaintiff's counsel contradicts the plaintiff's deposition testimony regarding the reasons he was terminated from his employment with defendant. Accordingly, this statement by plaintiff's counsel is given no weight, as it is not supported by – and, indeed, is belied by – the evidence of record.

The plaintiff's claims are: (1) a Title VII claim for failure to promote him to the Assistant Manager position that was awarded to Bonnie Emerson; (2) a Title VII disparate treatment in pay claim due to gender discrimination based on plaintiff's complaint to management about discrimination in July 2015; (3) an EPA claim for disparate pay; (4) a Title VII retaliation claim due to defendant's termination of plaintiff's employment on October 9, 2015; and (5) and an EPA retaliation claim based on defendant's termination of plaintiff's employment. The plaintiff does not plead additional legal claims in the amended complaint, *see* Doc. 9, and no other claims are before the court.[4]

---

[4] At his deposition, the plaintiff testified that he believed that he was denied a promotion to Restaurant General Manager, and that the reason he did not secure that position was rooted in gender discrimination. Doc. 23-4 at 33 (Q: "Are you making a claim for the general manager's position? A: "At this point now, yes, if I was in the assistant manager's position and [the general manager's position] became available, I would've probably got it. Most likely, I would have."). The plaintiff further testified that the position never came available during his period of employment, he did not apply to be the Restaurant General Manager, no one with BBG ever told him that he would be promoted to the position, and he was simply expressing his "opinion" that events would have unfolded such that he might have been promoted to Restaurant General Manager had he been promoted to Assistant Manager, had he not been fired, and had the position become available. *Id.* The plaintiff never applied to become the Restaurant General Manager. *See* Doc. 23-4 at 19 (Pl. Deposition). In fact, there is no evidence of record to suggest that the plaintiff ever expressed interest in becoming the Restaurant General Manager during his period of employment with defendant. In opposition to defendant's motion for summary judgment, plaintiff maintains that his failure to promote claim with respect to the Restaurant General Manager position is based on the theory that promotion to Restaurant General Manager "was a future promotional opportunity[] that was not offered to him[] as a result of Defendant's practices." Doc. 29 at 6.

The plaintiff did not make a claim in the Amended Complaint for failure to promote to the Restaurant General Manager position. *See* Doc. 9 at 4. He also did not attempt to amend his complaint to include a such a claim after his deposition. The same is true for the Title VII claim for disparate treatment in terms of discipline or work conditions that the plaintiff attempts to assert in his brief in opposition to the motion for summary judgment. *See* Doc. 29 at 4 (plaintiff felt "singled out" and discriminated against due to his gender when he was accused of having a short deposit and none of his female coworkers were "questioned" in connection with the deposit problem). These claims are not pled in the amended complaint, and they are not before the court. Pursuant to Federal Rule of Civil Procedure 8(a), a plaintiff's complaint or amendments thereto must set out the plaintiff's claims for relief, and "[a] plaintiff cannot amend a complaint through an argument in a brief opposing summary judgment." *Nickson v. Jackson Hosp. & Clinic Inc.*, 2017 WL 4366735, at *4 (M.D. Ala. Sept. 29, 2017) (citing *Hall v. Dekalb Cty. Gov't*, 503 F. App'x. 781, 786 (11th Cir. 2013)). Thus, defendant is entitled to summary judgment on plaintiff's failure to promote claim with respect to the Restaurant General Manager position as well as plaintiff's disparate

## II.    Disparate Treatment Gender Discrimination Claims

### A.    Title VII Failure to Promote Claim[5]

The *McDonnell Douglas* framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as here, there is no direct evidence of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997); *Brown v. Ala. Dep't of Trans.*, 597 F.3d 1160, 1174 (11th Cir. 2010). The plaintiff must first make out a *prima facie* case of discrimination. *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Walker v. Mortham*, 158 F.3d 1177, 1183 (11th Cir. 1998); *Combs*, 106 F.3d at 1527-28. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254) (internal quotations marks omitted).

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, nondiscriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528 (citing *McDonnell Douglas*, 411 U.S. at 802). "To satisfy this

---

treatment claim regarding defendant's treatment of him and the investigation related to the short deposit in October 2015 because the plaintiff did not assert such claims in the amended complaint.

[5] Defendant argues that the plaintiff's failure to promote claim is barred because he did not file a timely charge of discrimination as to this claim. *See* Doc. 23 at 15-16. For the reasons discussed *infra*, the plaintiff's failure to promote claim fails on its merits. Thus, the court does not reach the statute of limitations issue.

intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 257). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. *Walker*, 158 F.3d at 1184.

The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528. A plaintiff may establish pretext by producing evidence that reveals "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348-49 (11th Cir. 2007) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)) (internal quotation marks omitted). However, "[a] reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Id.* (citing *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in the original)).

It is well-established in the Eleventh Circuit that:

> Under the *McDonnell Douglas* framework, to prevail on a claim of failure to promote, a plaintiff may establish a prima facie case of … discrimination by showing that: (1) [he] is a member of a protected class; (2)

[he] was qualified and applied for the promotion; (3) [he] was rejected despite [his] qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted.

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). "The comparators for the fourth prong must be "'similarly situated in all relevant respects.'" *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)).

The plaintiff is a member of a protected class, but he fails to meet any of the remaining elements of a *prima facie* case. Moreover, the plaintiff does not argue that he satisfies a *prima facie* case in his response to the defendant's motion for summary judgment, and he has waived any such arguments that could have been raised.[6] Nevertheless, the court will address the claim on its merits.

---

[6] The Eleventh Circuit recently reiterated that,

> "To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) (citation omitted); *see also Maradiaga v. United States*, 679 F.3d 1286, 1293-94 (11th Cir. 2012) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties. That federal courts can take notice of [the law] does not mean that a party ... need not cite it to the court or present argument based upon it, or that federal courts must scour the law ... for possible arguments a [party] might have made.") (citation and quotation marks omitted); *cf. In re Antrobus*, 563 F.3d 1092, 1099-1100 (10th Cir. 2009) ("Under our rules we are not permitted to invent arguments even for *pro se* litigants; certainly, we cannot revive ones foregone nearly a year ago by such well-counseled litigants."); *Yeomalakis v. FDIC*, 562 F.3d 56, 61 (1st Cir. 2009) ("It is not our job, especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief.").

*Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1149 (11th Cir. 2017). Also, "[t]he onus is upon the parties to formulate arguments[.]" *A.L. v. Jackson Cty. Sch. Bd.*, 635 F. App'x 774, 787 (11th Cir. 2015) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).

As to the second element of the *prima facie* case, the plaintiff did not apply for the position – he merely discussed the possibility that he might become the Assistant Manager with the Restaurant General Manager. *See Taylor v. Austal, U.S.A., LLC*, 829 F. Supp. 2d 1162, 1177 (S.D. Ala. 2011) ("A plaintiff claiming that he was discriminatorily denied a promotion usually must show that he actually applied for the position as part of his prima facie case.") (citing *Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir. 1999) and *Combs*, 106 F.3d at 1539 n. 11). The plaintiff subjectively believed that the Restaurant General Manager was the ultimate decision maker, but the undisputed evidence of record is that she lacked hiring or promotion authority. Also, the plaintiff adduces no evidence that he was qualified for the Assistant Manager position. As to the third element, Bonnie Emerson, a woman, was hired to the Assistant Manager position; however, the undisputed evidence is that the ultimate decision makers did not know of plaintiff's interest in the job. Accordingly, he has not shown that he "was rejected despite his qualifications." *Wilson*, 376 F.3d at 1089.

Finally, the plaintiff does not satisfy the fourth element. He "concedes" that his qualifications "were not superior" to Emerson's qualifications. Doc. 29 at 6. Thus, the remaining question at issue is whether plaintiff's and Emerson's qualifications are equal. *See Wilson*, 376 F.3d at 1089. The court concludes that they are not on this record. Prior to being hired to the Assistant Manager position, Emerson had approximately twenty years of restaurant management experience at the assistant manager, co-manager, or manager positions, including eighteen months as an Assistant Manager at a Taco Bell restaurant in Tennessee. The plaintiff's highest management position was that of team leader or the

equivalent management level at other fast food restaurants. Simply put, the evidence of record does not present "a sufficient disagreement to require submission to a jury" on the issue of a comparison of plaintiff's and Emerson's qualifications. *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (citation omitted). No reasonable juror could find that the plaintiff and Emerson are equally qualified for the Assistant Manager position, and the plaintiff does not argue the point.[7]

Assuming that plaintiff could make out a *prima facie* case, the defendant contends that Emerson was hired, in part, because of her superior qualifications, and that is a legitimate, non-discriminatory basis for a promotion or hiring decision. *See Burdine*, 450 U.S. at 259 (An "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria."); *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (an employer's hiring of a more qualified candidate meets is a legitimate business decision that shifts the burden to the plaintiff to show pretext); *Beal v. Convergys Corp.*, 489 F. App'x 421, 423-24 (11th Cir. 2012) (an employer's decision to hire a more qualified candidate is a legitimate, non-discriminatory reason for a hiring decision).

Thus, the burden shifts to the plaintiff to show pretext. "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination

---

[7] The plaintiff asserts that there is evidence that his performance was superior to Emerson's, and he argues that performance "is clearly a question of fact[] that a reasonable jury should decide." Doc. 29 at 6. The plaintiff asks, "How could performance, (sic) not be an issue?" *Id.* Under well-established, binding precedent, qualifications for a position are material to a failure to promote claim. *See, e.g.*, *Wilson*, 376 F.3d at 1089. The plaintiff has not made any legal argument supported by case law that job performance is also material to a failure to promote claim in the sense that he advocates.

was the real reason.'" *Brooks*, 446 F.3d at 1163 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742 (1993)). In the failure to promote context,

> [a] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where ... the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997), *cert. denied, sub nom., Combs v. Meadowcraft Co.*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998); *see also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999), *cert. denied*, 529 U.S. 1109, 120 S. Ct. 1962, 146 L. Ed. 2d 793 (2000) (emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."); *Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position.... The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.").

*Lee*, 226 F.3d at 1253.

On the evidence of record, no reasonable juror could find that the defendant's hiring of Emerson was motivated by discriminatory animus upon comparing the qualifications of the two employees for the Assistant Manager position. *See Lee*, 226 F.3d at 1255 ("*None of Lee's proffered evidence established that she was more qualified than Hines, let alone so clearly more qualified for the position than Hines that a reasonable juror could infer discriminatory intent from the comparison.*") (emphasis in original and citations omitted); *Beal*, 489 F. App'x at 424 (The plaintiff "failed to show that no reasonable person could have chosen the selected candidates over her.") (citing *Brooks*, 446 F.3d at 1163 (holding that in the failure-to-promote context, "[a] plaintiff must show that the disparities between the successful applicant's and her own qualifications were of such weight and significance

that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff")).

Moreover, the plaintiff has not provided any argument or evidence that the defendant's hiring of Emerson is based on gender discrimination. The plaintiff maintains that defendant should have made a different promotion decision because the Restaurant General Manager told plaintiff that he would be promoted and because Emerson had a performance problem during her short tenure as a team leader.[8] A quarrel with the wisdom of an employer's decision is not sufficient to show pretext; rather, the plaintiff must submit evidence of discrimination. *See Lee*, 226 F.3d at 1253. There simply is none on this record.

The defendant is entitled to summary judgment on plaintiff's Title VII failure to promote claim because plaintiff has not made out a *prima facie* case of gender discrimination and, even assuming that he did so, he cannot establish pretext.

### B.     Unequal Pay Claims Under Title VII and the EPA

A plaintiff can sue his employer for gender-based pay disparities under Title VII and the EPA. In *Miranda v. B & B Cash Grocery Store, Inc.*, the Eleventh Circuit explained the similarities and differences between these federal statutory remedies. Similarly to the instant case, *Miranda*

> involves the application of two statutes passed by Congress to help eliminate gender-based discrimination in the workplace: The Equal Pay Act and Title VII. ...
>
> Gender-based discrimination in rates of pay to employees, whether male or female, is prohibited by the Equal Pay Act of 1963, which is a portion

---

[8] Emerson ultimately became the Assistant Manager; however, she was employed as a shift leader from January 5, 2013 to May 13, 2015.

of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 206(d) (1976), as well as by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The Equal Pay Act was directed only at wage discrimination between the sexes and forbids the specific practice of paying unequal wages for equal work to employees of the opposite sex. Title VII, on the other hand, forbids discrimination on the basis of gender, race, or national origin in a wide range of employment practices, including hiring, firing, training, and promoting. *See, e.g.*, *Waters v. Turner*, 874 F.2d 797, 801 n. 10 (11th Cir. 1989); *Beall v. Curtis*, 603 F. Supp. 1563, 1580 (M.D. Ga.), *aff'd without op.*, 778 F.2d 791 (11th Cir. 1985). ...

The burdens of proof are different under the two laws. A plaintiff suing under the Equal Pay Act must meet the fairly strict standard of proving that she performed substantially similar work for less pay. The burden then falls to the employer to establish one of the four affirmative defenses provided in the statute. Under the disparate treatment approach of Title VII, however, there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the burden of proving an intent to discriminate on the basis of sex (or race or national origin).

\* \* \*

Title VII and the Equal Pay Act exist side by side in the effort to rid the workforce of gender-based discrimination. Plaintiffs have two tools for relief, each of which provides different burdens of proof and may produce different amounts of compensation. …

In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S. Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court held that Title VII was intended to "supplement, rather than supplant, existing laws and institutions relating to employment discrimination" and that "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable federal statutes." *Id.* 415 U.S. at 46-49 & n. 9, 94 S. Ct. at 1019-20 & n. 9.

*Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1525-27 (11th Cir. 1992)

(footnotes omitted).

## 1. Title VII – Disparate Treatment as to Compensation

Under Title VII, it is unlawful for an employer to discriminate against an employee on the basis of his gender with respect to the terms and conditions of his employment, including compensation. *See* 42 U.S.C. § 2000e-2(a); *Gooden v. Internal Revenue Serv.*, 679 F. App'x 958, 964 (11th Cir. 2017) ("Title VII prohibits employment discrimination on the basis of race or gender[.]"). "To prevail on a disparate treatment claim, a plaintiff must generally demonstrate that an employer intentionally discriminated against [him] on the basis of a protected characteristic." *Gooden*, 679 F. App'x at 964 (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). Here, the plaintiff must present evidence that, when viewed in a light most favorable to him, demonstrates that the defendant discriminated against him on the basis of his gender.

In adjudicating a motion for summary judgment on a Title VII disparate treatment in pay claim based on gender discrimination, the court employs a variant of the *McDonnell Douglas* framework, as follows:

> To make a prima facie case of wage discrimination under Title VII, the plaintiff must show that [he] is a member of a protected class, [he] received lower wages than similarly situated comparators outside the protected class, and [he] was qualified to receive a higher wage. *Cooper v. S. Co.*, 390 F.3d 695, 734-35 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S. Ct. 1195, 163 L. Ed. 2d 1053 (2006).
>
> Once the plaintiff establishes a prima facie case, the burden shifts to the employer to present a legitimate, non-discriminatory reason for its action. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (*per curiam*). If the defendant meets its burden, the presumption of discrimination is rebutted and the employee must show that the employer's reasons were pretext for discrimination. *Id.* A plaintiff may show pretext by pointing to the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale." *Holland v. Gee*, 677 F.3d 1047, 1055-56 (11th Cir. 2012) (quotation marks and citation omitted). The plaintiff must show that the evidence, when viewed as a whole, creates a

reasonable inference that the employer engaged in discrimination. *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011). "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308-09 (11th Cir. 2012) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). Although a comment unrelated to the adverse decision may contribute to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext. *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002).

*Dimino v. Georgia Dep't of Admin. Servs.*, 631 F. App'x 745, 749 (11th Cir. 2015).

The plaintiff has shown that he is a member of a protected class and that he received lower wages than women who were employed as shift leaders by the defendant at the Taco Bell where the plaintiff also worked as a shift leader. The plaintiff identifies Bonnie Emerson, Tawanna Stovall, and Kimesha Massaline as shift leaders who earned a higher hourly rate of pay than he did. Doc. 29 at 7-8. Assuming, without deciding, that Emerson, Stovall, and Massaline are similarly situated comparators, and that the plaintiff establishes a *prima facie* case, the defendant nevertheless has met its burden to show legitimate, non-discriminatory reasons for the differences in the hourly rates of pay. *See Combs*, 106 F.3d at 1528.

Emerson was paid $9.00 per hour as a team leader, which was $.25 more than the plaintiff during this time, because of Emerson's substantial restaurant experience. Doc. 23 at 24. Stovall worked as a shift leader with defendant for two years longer than the plaintiff, and defendant justifies her higher rate of pay as due to "her prior experience and length of service." *Id.* at 24-25. Massaline made $.25 more per hour than the plaintiff from August

2014 to August 2015 because she had nine more months of experience as a shift leader while employed by the defendant. *Id.* at 25-26. The plaintiff does not rebut the defendant's proffered legitimate, non-discriminatory reasons for these pay disparities.

As to pretext, the plaintiff has produced no evidence whatsoever that the defendant's pay decisions were discriminatory. He asserts that Emerson's performance as a shift leader was substandard, that plaintiff's prior experience as an employee of "a separate company associated with the [defendant's] owners" is equivalent to Stovall's experience as a shift leader, and that plaintiff's experience as a shift leader at a Backyard Burger restaurant should count the same as Massaline's experience as a shift leader with defendant. Doc. 29 at 7-8. However, a plaintiff cannot show pretext by disagreeing the wisdom of an employer's decisions or by arguing that other decisions should have been made. *See Lee*, 226 F.3d at 1253. As with the plaintiff's failure to promote claim, he has presented no evidence beyond his own conclusory opinion that the defendant discriminated against him on the basis of his gender. A court is under no obligation to consider a party's conclusory testimony in ruling on summary judgment. *See Merriweather v. Charter Commc'ns, LLC*, 2015 WL 790771, at *19 (M.D. Ala. 2015) (a plaintiff's conclusory opinion on a material issue of fact is not properly considered at summary judgment); *see also id.* at n. 17 ("A court is under no obligation to consider a party's conclusory testimony when ruling on summary judgment.") (citing *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 and n. 6 (11th Cir. 1998)). Moreover, "[s]peculation or conjecture cannot create a genuine issue of material fact, and a mere scintilla of evidence in support of the nonmoving party cannot overcome a motion for summary judgment." *S.E.C. v. Monterosso*, 756 F.3d

1326, 1333 (11th Cir. 2014) (internal quotation marks omitted). The plaintiff simply has not identified or supplied any evidence of record from which a reasonable juror could conclude that defendant discriminated against him on the basis of his gender. *See Brooks*, 446 F.3d at 1163 ("A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (internal marks and citation omitted).

Because plaintiff does not carry his burden to show gender discrimination, defendant is entitled to summary judgment.

## 2. EPA Pay Claim

The burden-shifting paradigm that a court must employ in assessing the viability of an Equal Pay Act claim on summary judgment is as follows:

> To prevail on a claim under the EPA, an employee must first establish a prima-facie case "by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (citing 29 U.S.C. § 206(d)(1) and *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 41 L.Ed.2d 1 (1974) (quotation omitted)).

> Once the employee presents a prima-facie case, the employer may avoid liability by proving by a preponderance of the evidence that the pay differential is based on: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) ... any other factor other than sex." *Id.* at 1078 (quoting 29 U.S.C. § 206(d)(1)). "The burden to prove these affirmative defenses is heavy": the employer must show that "'the factor of sex provided no basis for the wage differential.'" *Id.* (quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)). If the employer overcomes this heavy burden, "the employee 'must rebut the [employer's] explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential.'" *Id.* (quoting *Irby*, 44 F.3d at 954).

*Nelson v. Chattahoochee Valley Hosp. Soc.*, 731 F. Supp. 2d 1217, 1235-36 (M.D. Ala. 2010).

Regarding the *prima facie* case, while "the plaintiff need not prove that [his] job and those of [his] comparators are identical [,] ... the standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 592 (11th Cir. 1994) (internal quotation marks and alterations omitted). The plaintiff bears "the burden of demonstrating that the 'jobs at issue are substantially similar[.]'" *Blackman v. Fla. Dep't of Bus. & Prof'l Regulation*, 599 F. App'x 907, 910 (11th Cir. 2015) (quoting *Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998)). To satisfy this burden, the plaintiff must come forward with evidence that his job is "substantially similar" to his comparators. *Id.* "Job titles are a factor for consideration, but are not dispositive." *Mulhall*, 19 F.3d at 592 (citation omitted). If a plaintiff leaves "the district court in the dark regarding the content of [a comparator's] position … [the plaintiff] fail[s] to establish a prima facie case under the EPA." *Blackman*, 599 F. App'x at 910. Such is the case here.

As in his Title VII disparate treatment in pay claim, the plaintiff identifies Emerson, Stovall, and Massaline as his comparators. *See* Doc. 29 at 7-8. While it is undisputed that those individuals are women and that they were paid at a higher rate than the plaintiff, these are not the only factors that the court must consider.

As before, the plaintiff makes no effort to identify evidence in the record to meet his burden to establish a *prima facie* case on his Equal Pay Act claim. *See* Doc. 29. On that

basis alone, the plaintiff has waived and abandoned the issue, and defendant is entitled to summary judgment. *See* n. 6, *supra*.

The plaintiff's omission notwithstanding, there is no evidence of record to satisfy his heavy burden to make a *prima facie* showing under the EPA. At all times relevant to the plaintiff's EPA pay claim, the plaintiff and Emerson, Stovall, and Massaline held the job title of "shift leader." As noted *supra*, a job title alone is insufficient for a plaintiff to make a *prima facie* case under the EPA. *See Mulhall*, 19 F.3d at 592. The only evidence in the record about the shift leader position is found in Market Coach Gail Gilmore's affidavit, which the plaintiff does not cite. Gilmore testifies that,

> A shift leader is the first promotion above team member. We typically begin to look at a shift leader to see if they have or will develop good management skills. It is important for a shift leader to be able to work with all kinds of people and to be able to lead them to good work performance. A good shift leader must be able to get along well with others. If they can't work with others, then they will not be able to manage their team very well.

Doc. 23-14 at 1.

There is a "descriptive" component that the plaintiff is required to satisfy at the *prima facie* stage. *Mulhall*, 19 F.3d at 590 (citing *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir. 1991); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1009 (11th Cir. 1989)). Gilmore's affidavit testimony does not shed any light on the "skill, effort, and responsibility" associated with the shift leader position except in noting that a shift leader is expected to work with others and lead subordinates to perform well. *Mulhall*, 19 F.3d at 592. There is no record evidence that Gilmore's testimony articulates the entirety of the job requirements for a shift leader, and there is no evidence that all shift leaders must

have the same skills, exert similar effort, and carry out the same job responsibilities. In addition, Massaline is identified as having been a "traveling shift leader" for part of the relevant time period, *see* Doc. 23 at 25, and the plaintiff does not explain whether and how that position is comparable to a shift leader's position.

In short, the plaintiff has asked the court merely to conjecture that he, Emerson, Stovall, and Massaline are comparators. Evidence which the plaintiff might have gathered and filed into the record is conspicuously absent. For example, the plaintiff did not file a deposition of defendant's corporate representative, at which plaintiff's counsel could have attempted to elicit testimony about the material aspects of the shift leader position, and about whether the skill, effort, and responsibilities are substantially similar for all who hold that job title. And, even if plaintiff could not have secured such a deposition, he did not produce evidence by any other means to meet the high standard for determining that jobs are equal in terms of skill, effort, and responsibility. *Blackman*, 599 F. App'x at 910.

The plaintiff has not established a *prima facie* case under the EPA, and the court's inquiry ends here. The defendant is entitled to summary judgment on plaintiff's EPA pay claim.

### III. Retaliation

#### A. Title VII

"Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). Congress thus recognized two predicates for retaliation claims: one for opposition to discriminatory practices, and another for participation in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." ... And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citations omitted). The plaintiff's retaliation claim is brought under the opposition clause. *See* Doc. 9.

Proving that an employer retaliated against an employee is rarely a straightforward undertaking. A plaintiff's case generally rests on circumstantial evidence, because direct evidence of an employer's intent or motivation often is either unavailable or difficult to acquire. *See Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1071 (3rd Cir. 1996) (*en banc*). Such is the case here, where the parties rely only on circumstantial evidence. Federal courts typically evaluate the sufficiency of circumstantial evidence using some variant of the *McDonnell Douglas* framework. *See St. Mary's Honor Center*, 509 U.S. 502.

"A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."[9] *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). For purposes of ruling on the instant motion for summary judgment, the court finds that the plaintiff satisfies the first two elements of a *prima facie* case – *i.e.*, he complained about discrimination in July 2015 and defendant fired him in October 2015. That said, the plaintiff has not produced evidence of causation, and the third element of a *prima facie* case is not met.

The Supreme Court recently clarified a plaintiff's burden, holding that, as to the causation standard for a retaliation claim, a plaintiff must "show that the [adverse employment action] would not have occurred in the absence of – that is, but-for – the defendant's conduct." *University of Texas Southwestern Med. v. Nassar*, 570 U.S. 338, 346-47, 133 S. Ct. 2517, 2525 (2013). In other words, a plaintiff has to "establish that his

---

[9] Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to show, through admissible evidence, a legitimate, non-retaliatory reason for the adverse employment action. *See Burdine*, 450 U.S. at 255. If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [retaliatory] animus," *id.* at 257, the presumption of retaliation created by the *prima facie* case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10. The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for retaliation. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).

or her protected activity was a but-for cause [and not just a motivating factor] of the alleged adverse employment action by the employer." *Nassar*, 570 U.S. at 362.

> The Eleventh Circuit

> recognized that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if [s]he shows that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that h[er] employer was engaged in unlawful employment practices, but also that h[er] belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that h[er] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). The plaintiff does not have to "prove the underlying discriminatory conduct that [she] opposed was actually unlawful in order to establish a prima facie case and overcome a motion for summary judgment[.]" *Id.* However, the objective reasonableness of her belief that the conduct is unreasonable must be shown. The court is required to "measure 'against existing substantive law' the objective reasonableness of [a plaintiff's] belief that [her employer] engaged in an unlawful employment practice." *Tatt v. Atlanta Gas Light Co.*, 138 F. App'x 145, 147 (11th Cir. 2005) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).

Here, the plaintiff testified that he believed that he was discriminated against on the basis of his gender. However, his subjective belief is not objectively reasonable in light of the evidence proffered in this case. Plaintiff's gender discrimination claims are premised

on the general facts that women who held the position of "team leader" were paid more per hour than the plaintiff, and that a woman, not the plaintiff, was promoted to the position of Assistant Manager. Other than noting the different genders of those involved, the plaintiff provides nothing beyond conclusory speculation that defendant discriminated against him because of his gender. The plaintiff's speculation is not evidence that can overcome a properly supported motion for summary judgment. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011) (stating that "'evidence' consisting of one speculative inference heaped upon another" was "entirely insufficient" to overcome summary judgment); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)). Plaintiff has not identified any action or comment that objectively could be construed as having been motivated by his gender. The only evidence of gender discrimination is the plaintiff's conclusory assertion. That alone, is not enough to establish objective reasonableness.

Even assuming that plaintiff has demonstrated objective reasonableness, his opposition claim does not survive summary judgment because he has not satisfied the third prong of a *prima facie* case of retaliation – causation. The plaintiff argues that causation is clear because he was questioned about the October 2, 2015 deposit shortage issue and "no female employee was questioned about such deposit shortage." Doc. 29 at 6. However, the assertion that defendant did not question any women is made by plaintiff's counsel, without citation to evidence of record. As noted above, "[s]tatements by counsel in briefs are not

evidence." *Skyline Corp.*, 613 F.2d at 1337; *see also Gilley*, 2016 WL 814885, at \*1 n. 2. Thus, the court does not consider this unsubstantiated statement. Even assuming that the statement could be corroborated by evidence, the plaintiff does not argue, and it is not self-evident, how defendant's failure to question other employees about an issue regarding a deposit made by the plaintiff demonstrates that defendant terminated plaintiff's employment because of his July 2015 complaint of discrimination.

The plaintiff's other contention in opposition to summary judgment on his retaliation claim is that defendant terminated his employment after he argued with Stovall at the October 8, 2015 meeting, but Stovall kept her job, and she went on to become the Restaurant General Manager. *See* Doc. 29 at 7. That argument ignores key, undisputed evidence. First, the plaintiff does not contest that the defendant's articulated reason for terminating his employment is because of his altercation with the Restaurant General Manager immediately after his argument with Stovall. In fact, he testified that he believed that one of the reasons for his termination was his altercation with the Restaurant General Manager. Viewing the evidence in a light most favorable to the plaintiff, the defendant did not fire the plaintiff because of his argument with Stovall, and the fact that Stovall's employment was not terminated is irrelevant because she did not engage in substantially similar conduct to that of the plaintiff – *e.g.*, she did not have an altercation with the Restaurant General Manager.

> To make a comparison of the plaintiff's treatment to that of [someone outside of the plaintiff's protected class], the plaintiff must show that he and the employees are similarly situated in all relevant respects. … it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The plaintiff has not shown that he and Stovall were disciplined differently for the same infractions.

Further, plaintiff has not identified or produced evidence that would allow a reasonable factfinder to find causation. Moreover, viewing the facts in the light most favorable to plaintiff, he cannot establish that retaliation was the "but-for" cause of his termination. *See Butterworth v. Laboratory Corp. of America Holdings*, 581 F. App'x 813, 817 (11th Cir. 2014) (holding that without establishing but-for causation, plaintiff failed adequately to support her claim for Title VII retaliation). To the contrary, he testifies that a number of reasons were the cause of defendant's decision to terminate his employment. *See* Doc. 23-4. Accordingly, he has not made out a *prima facie* case of retaliation based on his complaint in July 2015 and his termination in October 2015, and defendant is entitled to summary judgment on that claim.

Also, assuming, without deciding, that plaintiff established a *prima facie* case, he cannot overcome defendant's legitimate, non-retaliatory reason for terminating his employment. Defendant relies on the undisputed evidence of record, which includes the plaintiff's deposition testimony, that it terminated his employment because of his altercation with the Restaurant General Manager on October 8, 2015, during which the plaintiff raised his voice. This is a legitimate, non-retaliatory explanation for the defendant's decision to terminate the plaintiff's employment.

Thus, it is plaintiff's burden to come forward with evidence sufficient to permit a reasonable factfinder to conclude that defendant's stated reasons were not the real reasons

for his termination, but merely pretexts for retaliation. Plaintiff cannot demonstrate pretext unless it is shown both that the reasons were false and that retaliation was the real reason. *See St. Mary's Honor Ctr.*, 509 U.S. at 515. *See also Chapman*, 229 F.3d at 1030 (stating the plaintiff must meet each proffered reason "head on," and cannot succeed by simply disputing the wisdom of the employer's proffered reasons). Here, the plaintiff disputes the defendant's stated reason for terminating his employment without identifying evidence that indicates that the reason was false and the true motivation was retaliation. Further, in light of the plaintiff's deposition testimony that his altercation with the Restaurant General Manager was a reason for his termination, plaintiff has testified that he believes the defendant's stated reason, and he cannot demonstrate on the evidence of record that it was not the real reason or that the reason was false. Also, there is no evidence of record that the plaintiff's termination was retaliation for his July 2015 complaint of discrimination.

As the plaintiff cannot establish a prima facie case of retaliation, show pretext, or meet the onerous *Nassar* standard to maintain a retaliation claim under Title VII, defendant's motion for summary judgment is due to be granted as to defendant's retaliation claim.

### B. EPA Retaliation

The defendant assumes for the sake of argument that an EPA retaliation claim is cognizable, and it sets out the standard for a retaliation claim under the Fair Labor Standards Act ("FLSA"), within which the EPA is codified, as the balancing test that this court should employ. *See* Doc. 23 at 21-22 (citing 29 U.S.C. §§ 206(d); 215(a)(3) and

quoting *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (setting out elements of FLSA retaliation)). The plaintiff is silent on the issue. *See* Doc. 29.

The court has not located any Eleventh Circuit case setting out the test that a court should employ in adjudicating a motion for summary judgment on an EPA retaliation claim. However, a sister district court in the Eleventh Circuit has followed the example set by the United States Court of Appeals for the Seventh Circuit and found that a plaintiff must show the same elements as would be required to make out a prima facie case for retaliation under Title VII and the EPA. *See Saridakis v. S. Broward Hosp. Dist.*, 681 F. Supp. 2d 1338, 1353 (S.D. Fla. 2009) (citing *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (citing, in turn, *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001)). Also, the elements and the burden-shifting paradigm for a claim of retaliation under the FLSA and Title VII are substantively identical.

> The FLSA protects persons against retaliation for asserting their rights under the statute. See 29 U.S.C. § 215(a)(3). A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997). If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext. *See id.* In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights. *See Reich v. Davis*, 50 F.3d 962, 965–66 (11th Cir. 1995).

*Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). Thus, the court is persuaded that the analytical framework endorsed in *Saridakis* and set out in *Wolf* is the correct way to approach an EPA retaliation claim that is challenged on a motion for summary judgement.

31

In opposing defendant's motion for summary judgment on the EPA retaliation claim, the plaintiff incorporates by reference his arguments in opposition to summary judgment on his Title VII retaliation claim. *See* Doc. 29 at 7. The plaintiff concedes that the temporal proximity between plaintiff's complaint about pay in July 2015 – the last time he complained about pay discrimination – and his termination in October 2015 is too remote as a matter of law to show causation. *See* Doc. 29 at 6 ("The Plaintiff concedes that, if temporal proximity, were the only consideration, his claim would be due to fail, as a matter of law."). The court agrees. *See, e.g., Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (temporal proximity can be evidence of causation but "mere temporal proximity, without more, must be 'very close.'" (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001)). Moreover, the undisputed evidence of record is that the plaintiff received the pay raise after the July 2015 complaint effective in August 2015, *see* Doc. 23-14 at 1 (Market Coach Aff.), and that he was satisfied with that resolution. *See* Doc. 23-4. The plaintiff maintains that he complained that his pay raise was not added to his paycheck until September 2015, but complaining about the timing of a raise is not the same as complaining about wage discrimination.

For the reasons discussed *supra* regarding defendant's entitlement to summary judgment on plaintiff's Title VII retaliation, summary judgment is due to be granted in defendant's favor on the EPA retaliation claim as well.

## CONCLUSION AND ORDER

For the foregoing reasons, it is ORDERED as follows:

(1) Defendant's motion for summary judgment, *see* Doc. 22, is GRANTED, and summary judgment is hereby entered in defendant's favor on all claims.

(2) The Clerk of Court is DIRECTED to close this file.

A separate final judgment will be entered.

Done, on this the 28th day of March, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge